Kenneth Glenn **BENSCOTER,** Appellant,

v.

**The UNITED STATES,** Appellee.

No. 8774.

United States Court of Appeals
Tenth Circuit

April 13, 1967.

Jess Horn, Oklahoma City, Okl., for appellant.

John W. Raley, Jr., Oklahoma City, Okl. (B. Andrew Potter, Oklahoma City, Okl., on brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

MURRAH, Chief Judge.

The appeal in this criminal case involves primarily the recurring question of the propriety of the trial court's supplemental instructions to an apparently deadlocked jury in which he urged them to reach a verdict.

■■ Since this case was briefed and argued, we have again reviewed the case law and cautiously reaffirmed the propriety of a so-called Allen charge, provided the jury is explicitly given to understand that each of them is perfectly free to follow the dictates of his own conscientiously held views on guilt or innocence. See Burrup v. United States, 10 Cir., 371 F.2d 556. We have thought that an instruction of this kind, cautiously given, is entirely consistent with the " '* * * function of the judge to admonish the jury that they should deliberate together in an atmosphere of mutual deference and respect giving due consideration to the views of the others in the knowledge that in the end their verdict must reflect the composite views of all.' " At the same time, we have also suggested that " 'An admonitory statement in this tenor given before the jury retires to deliberate would be more appropriately influential and far less vulnerable to the charge of coercion.' " Id. citing and quoting Burroughs v. United States, 10 Cir., 365 F.2d 431. This is especially so since an Allen charge approaches the "ultimate permissible limits" of a judge's prerogative to guide and direct a jury toward a righteous verdict. See United States v. Rogers, 4 Cir., 289 F.2d 433. Each case must, of course, rest on its own facts.

■ In this case after the jury had been instructed, had deliberated about an hour, and it was Noon, they sent a message to the court stating that they would like a copy of the testimony of the defendant and a government witness. Upon returning from lunch, the testimony of these two witnesses was read to them. After about four hours of further deliberation, the jury was returned to the court room pursuant to a note to the judge stating that they could not reach "a unanimous decision". Ascertaining "the present condition of the jury", the judge proceeded to give a conventional version of the Allen charge. The jury was told that if they were unable to reach a verdict, another costly trial would ensue. They were also told that this was not to suggest that anyone should give up an honest conviction about the case or any of the essential elements of it, but that each of them was under the duty to "listen to your fellow jurors and consider their arguments and reasons and not to take an inflexible position without being fair and reasonable and listening to the arguments of fellow jurors." The judge reiterated that he was not suggesting that anyone should give up an honest conviction he had about the case, but then added " * * * now, this is not a difficult case for you to decide and this jury ought to reach a verdict in this case." He proceeded to restate the essential elements of the offense of the conspiracy charged and suggested that the jury decide whether, if a conspiracy did exist, the defendant was a member of it and whether some overt act was done in furtherance of it; that the case had been well presented and argued; and that the case was in "such shape that you ought to reach a verdict." The jury was excused to resume their deliberations and admonished to heed the court's suggestions to "re-examine your respective positions about the case and listen to your fellow jurors and their arguments. If you consider that you are wrong, change your position. But, I would hasten to say, as I have said before, this is not intended that anyone of you give up any honest and firm conviction you have about any aspects of the case." After the jury had retired, defense counsel objected to the court's

remarks to the jury "for the reason that they went back over some of the evidence and pointed out some things to the jury that we feel were not proper and at this time we move for a mistrial." After further deliberation, the jury was again returned to the court room pursuant to another message asking that the testimony of a government special agent be reread. The testimony was reread, and after more deliberation, a verdict of guilty was returned.

It is not clear whether counsel's objection to the court's remarks went to what he now contends was an exhortation to reach a verdict. But, in any event, we will notice it since, as we have previously observed in Burrup v. United States, supra, the instructions, if coercive, cannot be effectively remedied after the harm has been done.

 Appellant does not now seem to object to the giving of an Allen charge. The contention is rather that the charge given went beyond the permissible limits of Allen, i. e. see United States v. Rogers, supra. Particular exceptions are taken to the statement that "this is not a difficult case for you to decide, and this jury ought to reach a verdict in this case." We quite agree that out of context the statement transgresses permissible limits of advice and guidance and partakes of impermissible exhortation. By itself, it comes perilously close to the statement condemned in Jenkins v. United States, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957, where the jury was told that "You have got to reach a decision in this case." [1] Id. 446, 85 S.Ct. 1060. And, see Burroughs where we reversed an Allen charge on minority vis-a-vis majority, coupled in effect with a plea to reach a verdict within a specified time. But, a comparison of the context in which our statement was made with the contexts in which those statements were made demonstrates what seems to us the difference between guidance and coercion. In those cases the jury was never assured of their right and duty to hold firmly to conscientiously held convictions even in the face of a contra-minded majority. While the judge may not tell the jury in one breath that they should not give up their conscientiously held convictions and in the next breath tell them they ought to arrive at a verdict, as we read the instructions in our case, the court defined the issues and then told the jury that they ought to arrive at a verdict if they could do so without surrendering their honest convictions concerning guilt or innocence. And see Elbel v. United States, 10 Cir., 364 F.2d 127. The record indicates that the jury arrived at a verdict after painstaking consideration of all of the evidence, and we cannot say they were coerced. Cf. Henry v. United States, 9 Cir., 361 F.2d 352.

 Appellant complains of the admission of testimony said to be irrelevant, immaterial and prejudicial in that it pertained to events unrelated to the conspiracy alleged in the indictment. The entire transcript is submitted to show the impropriety of the evidentiary rulings and their prejudicial nature. It is sufficient to say that an examination of the record leaves us with the definite impression that Judge Daugherty conducted the trial of the case with characteristic care and acumen. One of the government's principal witnesses, a co-conspirator but not a co-defendant, willingly testified to the details of the conspiracy. He was prone to tell his story without waiting to be asked. But, the court on more than one occasion admonished counsel and the witness to confine the testimony to specific statements between the co-conspirators, and we think the testimony of this witness was kept well within evidential bounds. There was also some sequel testimony by another witness concerning events which occurred after termination of the alleged conspiracy. More particularly testimony was admitted concerning post-conspiracy conversations with one of the co-conspirators who was killed in a sensationalized attempted robbery before trial.

1. The full text of the instructions is set out in opinion of the Court of Appeals for the District of Columbia reported at 117 U.S.App.D.C. 346, 330 F.2d 220.

This testimony was not regarded as sufficiently harmful to provoke an objection at the time on other than hearsay grounds. In any event, after consultation with counsel, the court admonished the jury not to consider the testimony of any witness concerning post-conspiracy activities. Everyone seemed to think that the admonition cured any defects, and we quite agree.

█ Objections are now leveled at the testimony of a government agent who testified to the substance of an interview with the appellant while in custody on a state charge. The contention seems to be that inculpatory statements made to the government agent were intended by appellant to exculpate himself from the state charge and that they were used against him on this charge without first advising him of his right to counsel under Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, or warning that the statements would be used against him on this charge. The short answer to this contention is that when in the trial of the case the government agent was about to testify and an objection was made, the jury was excused and the court conducted careful inquiry concerning the circumstances under which the interview took place. The government agent stated that after identifying himself to the defendant, he told defendant that he didn't have to make any statement, that he had a right to consult an attorney before making any statement and that anything he did say could be used against him. The court inquired whether there was any question about the voluntary nature of the statements. Defense counsel answered, "I believe that any statements that he actually made were present and voluntarily given, and I am sorry that I made the objection, but in talking to my client he tells me that what the officer said is true, and that he did state these things, advising him of his rights." The agent proceeded to relate the substance of the interview. The jury was thereupon recalled, and the agent repeated what the defendant had told him without objection.

There can be no valid objection to the admission of this testimony.

From the whole record we are satisfied there was no reversible error in the conduct of the trial and the judgment based upon the jury verdict.

Affirmed.