411 F.2d 415
 UNITED STATES of America, Plaintiff-Appellee,
v.
Paul Arthur WINN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Thomas CHANDLER, a/k/a Tommy Chandler, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mannie Mayo BRAGG, Defendant-Appellant.
 Nos. 170-68-172-68.
 United States Court of Appeals Tenth Circuit.
 June 2, 1969.
 Rehearing Denied June 23, 1969.
 
 James Edward Douglas, Oklahoma City, Okl., for appellants Winn and Chandler.
 Carroll Samara, Oklahoma City, Okl., for appellant Bragg.
 John E. Green, Oklahoma City, Okl. (B. Andrew Potter, Oklahoma City, Okl., with him on brief), for appellee.
 Before MURRAH, Chief Judge, and LEWIS and HOLLOWAY, Circuit Judges.
 MURRAH, Chief Judge.
 
 
 1
 Appellants Paul Arthur Winn and Thomas Chandler were convicted by a jury on four substantive violations relating to the illegal manufacture of intoxicating liquors and for conspiring to violate the Internal Revenue Laws. Sections 5601(a) (1), (4), and (7), 5686(a) of Title 26, United States Code, and Section 371 of Title 18. Appellant Bragg was charged and convicted only on the conspiracy count. They were jointly tried and sentence was imposed on the jury verdicts.
 
 
 2
 On appeal, all three challenge their convictions on the following grounds: 1. The trial court gave a coercive Allen-type instruction after the jury had deliberated and reported itself deadlocked; 2. They were denied a fair and impartial trial due to bias on the part of the trial judge; and 3. The sentences imposed were excessive. In addition, Bragg alone alleges the evidence was insufficient to support his conviction. For reasons we shall state, we affirm the judgments.
 
 
 3
 Once again we face the vexatious issue of the propriety of an Allen-type instruction. This instruction received its name from one approved by the Supreme Court in Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
 
 
 4
 Despite much criticism levelled at this type of charge[1] this Court since Berger v. United States, 62 F.2d 438 (10th Cir. 1932) has cautiously approved such an instruction in appropriate circumstances.[2] At the same time we have said more than once that an instruction of this kind would be more "appropriately influential and far less vulnerable to the charge of coercion" if given before the jury initially retires. Burroughs v. United States, 365 F.2d 431, 434 (10th Cir. 1966).
 
 
 5
 The fear has always been that an admonitory word from the judge to a deadlocked jury will undermine the sanctity of their deliberations. But we have thought that a proper supplemental charge can be given without prejudicial effect "provided the jury is given to understand they are not required to give up their conscientiously held convictions." Burrup v. United States, supra 371 F.2d at 558. Actually, the inquiry in each case is whether the language used by the judge can be said to be coercive, or merely the proper exercise of his common law right and duty to guide and assist the jury toward a fair and impartial verdict. Elbel v. United States, supra 364 F.2d at 136. In our case the jury reported itself unable to agree after 4 hours of deliberations. The jury was thereupon recalled and instructed: "* * * Now the Court doesn't want to know how you stand at all and it would be improper for you or anyone to attempt to say how you stand on the problem before you.
 
 
 6
 "I do want to say that to me, though I have tried lots of cases, this is a rather comparatively simple case. To have a hung jury simply means it's got to be tried again, and the expense that the defendants have gone to and the expense that the plaintiff has gone to will be lost, and another jury in my honest conviction would be no smarter, no better — could be no smarter, could be no more intelligent, than this group of jurors.
 
 
 7
 "The Court never wants to force a verdict of any kind under any circumstances, and that would be wrong. The Court doesn't do that and the Court is not going to do it now.
 
 
 8
 "Notwithstanding that fact, I should like to ask Mr. [Foreman], if you don't think that if you would go back and work a little while longer you might arrive at a verdict?"
 
 
 9
 JURY FOREMAN: "Well, we could go back and we will talk it over, and it wouldn't hurt to talk it over some more and see if we can't arrive at —"
 
 
 10
 THE COURT: "Does anyone have any objection to going back and trying to arrive at a verdict in this case? Well, will you do that and try it for a little while and when you get tired, if you can't arrive at a verdict, let me know and the Court will take the proper action at that time."
 
 
 11
 One hour and 15 minutes after again retiring, the jury returned the verdicts herein challenged.
 
 
 12
 The brunt of Appellants' argument is that the statement that "this is a comparatively simple case" prejudicially intimidated the minority jurors and was not remedied by the later statement that "The Court never wants to force a verdict of any kind under any circumstances". And that this is especially true because of the court's failure to remind the jury that the defendants were presumptively innocent and the Government had the burden of proving them guilty beyond a reasonable doubt, citing Berger v. United States, supra.
 
 
 13
 It would, of course, be more palatable if the jury were again reminded of the presumption of innocence and burden of proof, and, more importantly, told they must not give up their conscientiously held views. But there is no ritual of words for common law instructions in federal courts. The question is whether the language used was coercive, not whether the judge used the magic words. Appraising the instruction as a whole, in its context, we think the jury was given to understand that the judge had no intention to force any kind of verdict and if, after a little more deliberation, they were unable to reach a verdict, appropriate action would be taken. We cannot say that the words used were reversibly coercive.
 
 
 14
 The final issue of substance is Bragg's assertion that the evidence was insufficient to support his conspiracy conviction. Viewing the evidence with its reasonable inferences in favor of the Government, we cannot agree with Appellant. Cotton v. United States, 409 F. 2d 1049 (10th Cir. 1969).
 
 
 15
 No objection was made to the court's instructions on conspiracy and they thus come to us as the law of the case. Rule 30, Fed.R.Cr.P. 18 U.S.C. The trial judge pertinently and clearly told the jury that "Mere similarity of conduct among members and the fact that they may have associated with each other and may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy. * * * What the evidence in the case must show beyond a reasonable doubt in order to establish proof of the existence of a conspiracy is that the members in some way or manner, or through some contrivance, positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." And see Jones v. United States, 365 F.2d 87 (10th Cir. 1966). It is not enough that the evidence might have been sufficient to support an aider and abettor conviction. Nye & Nissen v. United States, 336 U.S. 613, 620, 69 S.Ct. 766, 93 L.Ed. 919 (1949).
 
 
 16
 The record reveals the following situation: Winn, Chandler, and Madison were convicted of operating and conspiring to operate an illegal still south of Guthrie, Oklahoma, for the manufacture of intoxicating liquor. On appeal, neither Winn nor Chandler challenge the sufficiency of the evidence to convict them and Madison does not appeal. Winn and Chandler were both observed by government agents working at the still. As to Bragg, the record reveals the following: A red truck, owned by Bragg, was used by Winn on three occasions to pick up large quantities of sugar (a prime ingredient in the manufacture of alcoholic beverages). On the last occasion, Bragg was a passenger in the truck when the sugar was loaded. Government agents observed this truck leave the grocery store and proceed to "Club 77" — a nightclub operated by Bragg and his wife. After stopping at the club, the truck left the area and was no longer observed by the agents. The record is unclear as to whether Bragg remained in the truck when it left the club. Later the same day the truck returned to the club and was unloaded. Bragg was not identified as being present or assisting the unloading nor were the government witnesses able to testify as to just what was unloaded. On a separate occasion, Bragg discussed the presence of federal agents at the Guthrie airport with an airport employee and made several trips to the airport while agents were there.
 
 
 17
 Much of the testimony as to Winn concerned his activities in the "Club 77" vicinity, handling jugs and grain used in manufacturing intoxicating liquors. On one occasion, government agents followed in an airplane, Bragg's red pickup from "Club 77" to the still area, approximately 40 miles away. Later, a black pick-up truck, earlier observed by agents loaded with jugs, was found empty at Bragg's motel adjoining "Club 77". Bragg frequently visited with the other defendants, both at the club and his home. A DeSoto, owned by Bragg, was used by Winn and Chandler on numerous occasions and seen in the vicinity of the still. Finally, two government agents on one occasion saw Bragg, Chandler, and Winn on a road leading from a section line to the still area.
 
 
 18
 There is no direct evidence of an agreement of the parties to engage in the criminal enterprise. The essential agreement must be gathered from the activities of the parties and their association together in the observed activities. We know, of course, that conspiracies of this type are never formalized. Rather they spring from activities and associations deemed sufficient to justify an inference that two or more of the parties did tacitly agree and combine to violate the law. See Jones v. United States, supra.
 
 
 19
 The only ties between Bragg and the conspiracy are the use of his truck, car, and premises in furtherance of the conspiracy; his interest in the activities of the federal agents at the Guthrie airport; his presence when some of the sugar was bought; and his presence near the still area about 40 miles from his club. While his mere presence at all of these places and at all times is not wholly inconsistent with his innocence, when his observed conduct is considered in its totality, and most favorably to the Government, we cannot say that a jury could not justifiably find beyond a reasonable doubt that Bragg was actively, consciously and culpably associated with the criminal enterprise.
 
 
 20
 The remaining allegations of error are without merit. Appellants argue that the trial judge's comments made subsequent to the return of the jury's verdicts were evidence of partiality. Such comments can have no effect on the verdict and "merely characterize the judge's view of the seriousness of the offense and the culpability of the offender." Hall v. United States, 404 F.2d 1365, 1366 (10th Cir. 1969) and Jordan v. United States, 370 F.2d 126 (10th Cir. 1966). And the sentences all being within the term authorized by the statute, they are "invulnerable to attack here." Hall v. United States, supra at 1366 and Jordan v. United States, supra.
 
 
 21
 The judgments are respectively affirmed.
 
 
 
 Notes:
 
 
 [1]
 See State v. Thomas, 342 P.2d 197 (Ariz. 1959) and State v. Randall, 353 P.2d 1054 (Mont.1960) rejecting an Allen-type charge entirely. Cf. comments in Huffman v. United States, 297 F.2d 754, 755 (5th Cir. 1962) dissenting opinion, Thaggard v. United States, 354 F.2d 735, 739 (5th Cir. 1966) specially concurring opinion, and Green v. United States, 309 F. 2d 852 (5th Cir. 1962). And see note 31 Chicago L.Rev. 386 and note, 53 Va.L.Rev. 123
 
 
 [2]
 Speak v. United States, 161 F.2d 562 (10th Cir. 1947); Apodaca v. United States, 188 F.2d 932 (10th Cir. 1951); Thompson v. Allen, 240 F.2d 266 (10th Cir. 1956); Beckstead v. United States, 272 F.2d 571 (10th Cir. 1959); Carter v. United States, 333 F.2d 354 (10th Cir. 1964); DeVault v. United States, 338 F.2d 179 (10th Cir. 1964); Robinson v. United States, 345 F.2d 1007 (10th Cir. 1965); Elbel v. United States, 364 F. 2d 127 (10th Cir. 1966); Burroughs v. United States, 365 F.2d 431 (10th Cir. 1966); Burrup v. United States, 371 F. 2d 556 (10th Cir. 1967); Benscoter v. United States, 376 F.2d 49 (10th Cir. 1967); and Breeze v. United States, 398 F.2d 178 (10th Cir. 1968)