**Ann Irwin HEFLIN, Al Philip Kane and Eugene James Keogh, Executors, Appellants,**

v.

**Julius SILVERSTEIN, Appellee.**

**No. 21271.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 17, 1968.

Decided Nov. 7, 1968.

Mr. Warren E. Magee, Washington, D. C., for appellants.

Mr. David Reich, Washington, D. C., for appellee.

Before BAZELON, Chief Judge, and DANAHER and ROBINSON, Circuit Judges.

DANAHER, Circuit Judge:

The appellants are executors[1] of the estate of the late Charles Patrick Clark

---

1. Following the death of Mr. Clark on or about November 28, 1967, the appellants as his executors were substituted pursuant to FED.R.CIV.P. 25(a) and this court's Rule 28.

who had locally been engaged in the practice of law. Appellee Silverstein, also an attorney, sued Clark in the District Court after an arrangement between them had been terminated under circumstances to be discussed. After a jury trial, the appellee was awarded damages of $5,436 with interest from March 12, 1963 and costs. The appellants here contend that the District Court erred: (1) in denying Clark's motion for summary judgment; (2) in denying Clark's motions for a directed verdict and for judgment n. o. v.; and (3) in its instructions to the jury.

■ As to the first contention, it is abundantly clear that there was sharply conflicting evidence respecting highly material facts as claimed by the respective parties. This was no case for summary judgment.[2]

■ As to the second contention, the plaintiff's evidence established[3] not only his right to go to the jury, but if believed by the jury, supported his right to recover unless there was error otherwise.

Respecting the appellants' third contention, we turn to the record. The appellee in March, 1962 resigned his position[4] as Assistant General Counsel of the General Services Administration, and on March 12, 1962 entered the law offices of the decedent Clark. As Silverstein claimed, the parties had entered into an oral agreement whereby *for one year* Silverstein was to render services as counsel for which Clark was to pay the appellee at the rate of $25,000 per annum. Payments on a semimonthly basis of $1,041 continued until October 2, 1962 as of which date the arrangement[5] was terminated.

Clark testified that he had an extensive legal practice "highly personalized" in nature, representing substantial business interests. One of his assistants was about to leave just as Clark had been retained by a Long Beach Federal Savings and Loan Association. Discussing the projected engagement with Silverstein, Clark said to the appellee, according to the transcript:

If you want to come, fine. I will tell you what I will do, I will pay you on the basis of $25,000 a year. Now if the thing doesn't work out *I will save you whole*, you don't have to worry, at least you will be carried for six months and if it doesn't work out I will help you in every way possible to get your old job back or wherever you'd like to go.

I said, 'Now do you understand that?'

And he said to me, 'Well, I'd like to have something in writing.'

And I said, 'Something in writing?'

I said, 'What do you mean something in writing?'

---

2. Dewey v. Clark, 86 U.S.App.D.C. 137, 180 F.2d 766 (1950).

3. *See generally,* the governing rules outlined in Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 143 F.2d 142 (1944).

4. Silverstein's salary at that time was $15,515 per annum. In addition, he testified, he had accrued substantial sick leave, 26 days of annual leave and important retirement rights. Such accumulated rights ceased when Silverstein resigned his permanent tenure as a Government lawyer and entered upon the arrangement with Clark.

5. Other terms of the claimed agreement had included Silverstein's entitlement to a share of Clark's fees on cases which might be assigned to Silverstein who was also free to work up his own private practice, fees with respect to which were to be set by Clark. Additionally, all office overhead expense was to be borne by Clark.

On the other hand, under examination by Clark's own counsel, we find:

Q. Did you have any contract arrangement or agreement to pay Mr. Silverstein, to give him free use of your office to practice law on his own account?

A. Absolutely not.

Yet the record shows that in addition to payments from March to October 2, 1962 of semimonthly amounts of $1,041 each, Clark's counsel brought out that Silverstein had been paid $775 in bonuses while Silverstein was in the Clark office.

I said, 'I don't understand you.'

I said, 'Here I am, bringing you in here, offering to pay you on the basis of $25,000 a year.' (Emphasis supplied.)

Clark denied that he had entered into an agreement with Silverstein either to hire him or retain him for a period of one year. In short, Clark took the position that no definite term of employment was fixed, and consequently the employment was indefinite and could be terminated [6] at any time.

■ The appellants have argued that the trial judge erred in failing to instruct on "the issue as to whether or not the contract was breached." It is axiomatic that a trial judge is not bound to accept the very language of a request. It is sufficient if the substance of the instruction as given be correct in law, adapted to the issues developed at trial and adequate for the guidance of the jury.

■ Thus tested, we have concluded that the charge as a whole, as well as specific instructions, aptly and adequately presented the legal principles posed by the claims of the parties. Actually, to eliminate the possibility of confusion, the trial judge went to substantial lengths in his effort to afford sufficient guidance to the jurors, and he told counsel in advance of his plan to simplify matters for the jury "if that is agreeable to both counsel."

There is no question that the relationship between Silverstein and Clark ceased as of October 2, 1962. The judge pointed out that Silverstein had brought "this suit for the compensation that he claims to be due him for the balance of the year, that is, from October 2nd, 1962 to March 12, 1963, which is the date when the year would have ended." [7] The instructions outlined that the defendant had claimed that

he employed the plaintiff at a salary of $25,000 a year, that there was no contract between them that the employment should last for any particular period and that he had the right to terminate the employment at will at any time, that he exercised that right and that he is under no obligation to pay the plaintiff for any period subsequent to the date of the termination of the employment.

The matter of Clark's right to terminate [8] the arrangement predicates his

---

6. The jury might have regarded the following as not unfairly illustrative of Clark's answers to various questions put by his own counsel:

Q. Mr. Clark, before we get into the Halpern situation would you go and tell me *what was the final conversation or arrangement which you had with Mr. Silverstein* when he came over from General Services Administration to your office?

A. To the best of my recollection, I said to Julius, in the first place, *I had committed myself to bringing him in.* I said, well, here is an opportunity, I will bring him in. So I called him and he came over and we talked, and I said to him, 'Now, Julius, do you know what you are doing?' I said, 'Here you got 27 years in the Government.'

* * * * *

There are many variables that the distinguished jurist knows far beyond my poor mind to even comprehend, but at least I explained it to him and I said, 'What about this retirement of yours? Do you know what you are doing if you want to come? I don't mind bringing you in and *I don't mind giving you the money because* thanks to almighty God *I have the income,* I am going to get more income, so the money isn't of any consequence. I am worried about your change of position and I am also worried *as to whether or not you can work out.'* (Emphasis added.)

Demeanor as a silent witness may have played an important if not decisive role in the jury's appraisal of the decedent's version of the circumstances. *Cf.* Broadcast Music v. Havana Madrid Restaurant Corp., 175 F.2d 77, 80 (2 Cir. 1949).

7. The trial judge might well have concluded that appellants' decedent had failed to establish an acquiescence by the appellee in the termination of their arrangement.

8. On brief, the appellants point to J. E. Hanger, Inc., of Washington, D. C. v. Fitzsimmons, 50 App.D.C. 384, 273 F. 348 (1921), but there the court noted the

claims of law before us. Thus the judge continued:

> The question to be determined by you in this case is whether there was or was not a contract between the plaintiff and the defendant that the plaintiff was to be employed *for at least a year* or whether the employment was indefinite, at will, as the law calls it.

> If you find that such a contract as the plaintiff claims existed, your verdict will be for the plaintiff. If you find that no such contract did exist but that the employment was terminable at will, your verdict will be in favor of the defendant.

> This is the only question for you to decide. Everything else is extraneous and should be laid to one side except as it may possibly throw light on the question that you have to decide, that is, whether such a contract as the plaintiff claims actually existed. (Emphasis supplied.) [9]

Once again the judge pointed out the plaintiff's claims in terms of a one year contract of employment on retainer. He continued:

> The defendant denies the making of any such contract but claims, as I said, that he employed the plaintiff for no definite term, employed him at will and could terminate the employment at any time.

His discussion of the claims of the parties seems to us in retrospect to have been highly enlightening, and so it could well have appeared to the jurors. Then, in conclusion it was reemphasized:

> Now as I said to you before, your verdict will be either in favor of the plaintiff or in favor of the defendant.

Your verdict will be for the plaintiff if you find that a contract *such as the plaintiff claims* did exist. Your verdict will be for the defendant if you find *that it did not exist* or that the plaintiff has not established by a fair preponderance of the evidence that it existed. (Emphasis supplied.)

We have carefully reviewed the pleadings, the evidence in its entirety, and the instructions, even as we have examined and considered the briefs and the authorities relied upon. We have concluded that the judgment should be, and it is

Affirmed.

---

contract had not specified the time during which it was to continue; hence, absent either an express or implied provision as to its duration, the agreement was terminable at the will of either party.

Appellants rely further upon Littell v. Evening Star Newspaper Co., 73 App. D.C. 409, 120 F.2d 36 (1941). But there, the court noted that there was nothing

more than an ordinary business contract for an indefinite period, subject to the continuing satisfaction of both parties, and terminable by either upon reasonable notice.

Additionally cited authorities from other jurisdictions are of like tenor.

9. *Cf.* Riefkin v. E. I. Du Pont de Nemours & Co., 53 App.D.C. 311, 290 F. 286 (1923).