Donald J. ANGELINI, doing business under the name and style of Angel and Kaplan Sports News Service, Plaintiff-Appellant,

v.

ILLINOIS BELL TELEPHONE COMPANY, an Illinois Corporation, Defendant-Appellee, and United States of America, Defendant-Intervenor Appellee.

No. 17156.

United States Court of Appeals Seventh Circuit.

Nov. 6, 1969.

Rehearing Denied Dec. 2, 1969.

---

Anna R. Lavin, Edward J. Calihan, Jr., Chicago, Ill., for plaintiff-appellant.

Thomas A. Foran, U. S. Atty., for defendant-intervenor-appellee the United States; John Peter Lulinski, Jack B. Schmetterer, Asst. U. S. Attys., of counsel.

Donald H. Sharp, Robert V. R. Dalenberg, Alan N. Baker, Chicago, Ill., for defendant-appellee.

Before DUFFY, Senior Circuit Judge, and FAIRCHILD and KERNER, Circuit Judges.

DUFFY, Senior Circuit Judge.

The principal issue for us to decide in this case is whether Ill.Rev.Stats. Ch. 38, § 28–1(a) (10), which forbids knowing telephone transmission of "information as to wagers, betting odds, or changes in betting odds", may, consistently with freedom of speech, be applied to a telephone subscriber who does not accept wagers but supplies odds quotations to bookmakers and gamblers, so as to bring him within 18 U.S.C. § 1084(d), which requires the termination of telephone service used for interstate transmission of gambling information "in violation of * * * State * * * law."

Plaintiff filed complaint against the Illinois Bell Telephone Company (Ill.

Bell) alleging he had received a notice from the defendant that plaintiff's telephone service would be terminated on April 8, 1968, pursuant to the request of the Federal Bureau of Investigation and the United States Attorney. Jurisdiction was based on 28 U.S.C. § 1331.

The complaint asked for a temporary restraining order and for preliminary and permanent injunctions forbidding the termination of the telephone service.

A temporary restraining order was entered on April 5, 1968. Leave was granted to the United States to intervene as a defendant. Evidence was taken on four court days. The temporary restraining order was dissolved on May 3, 1968 after which plaintiff applied for the convening of a three-judge court.

On June 13, 1968, the District Court denied the application for the three-judge court and overruled the motion for a preliminary injunction. It then entered judgment for the defendant and dismissed the complaint.

For many years, plaintiff Angelini operated a business known as "Angel and Kaplan Sports News Service",[1] with headquarters on North Clark Street in Chicago. A preliminary activity was to prepare and sell to a group of subscribers, a list or schedule of coming sport events. Each sports schedule has printed boxes left blank allowing for the insertion of other information.

The practice followed was that shortly before any of the events took place, the subscriber would telephone Mr. Angelini in Chicago. If a caller properly identified himself such as by using a code name or number, either plaintiff or one of his employees would permit the caller to listen to a recorded message which had been prepared either by plaintiff or under his direction. These recordings contained information which could be entered in the blank spaces on the printed list which had theretofore been distributed.

Plaintiff's attorney insists that her client used the telephone only to express an opinion as to the relative strength of teams engaged in athletic contests, and that such use was not in violation of Ill. Rev.Stats. Ch. 38, § 28–1(a) (10). If such section is held to be applicable, plaintiff insists that it offends the First Amendment, United States Constitution.

It seems advisable to set forth one of the recordings which is typical of those usually used:

"Good morning. In the NBA playoff for tonight Boston will be at Detroit at 7:00 o'clock, that is, Boston at Detroit. Boston is one point. The total number is 231. For the exhibition baseball, Detroit is one twenty, Pittsburgh one forty, the Yankees are one twenty, St. Louis is one forty, San Francisco is a dollar and a half. The Cubs are one twenty, Philadelphia is one forty and the White Sox are one-twenty. In the hockey for tonight I am only using one game, that is Chicago at Detroit at 7:00 o'clock on TV, that is Chicago at Detroit. Detroit is a straight five to seven over Chicago. If you miss anything, just hold on, please."

A witness from the FBI testified that the information transmitted in the recording was the odds on sporting events mentioned. Thus, with reference to baseball games "The Cubs are one twenty" which meant that the Chicago Cubs were favored by odds of 6–5 (*i. e.*, $1.20.–$1.00).

Quotations which were given by Angelini concerned baseball, basketball, football, hockey but not horse racing. The plaintiff did not himself place or accept bets or wagers.

Ill.Rev.Stats., Ch. 38, § 28–1(a) (10) provides that it is unlawful to transmit by telephone "information as to wagers, betting odds, or changes in betting odds."

In order to avoid applying this statute to information protected by the First

---

1.  Also doing business as Bill Kaplan Sports News Service, Don Angel Sports News Service and A & K Sports Publications.

Since 1966, plaintiff has been the sole owner.

Amendment, it has been limited by court decisions to the "rapid" transmission of either actual wagers, betting odds or changes in betting odds *to* or by persons engaged directly or indirectly in gambling operations, a construction which preserves the freedom of speech but does not hinder the legislative purpose of suppressing gambling. Kelly v. Illinois Bell Telephone Co., and United States of America; Kelly v. Western Union Telegraph Co., and United States of America, 325 F.2d 148, 152 (7 Cir., 1963); Telephone News System, Inc. v. Illinois Bell Telephone Company, 210 F.Supp. 471 (N.D.Ill., 1962), 220 F.Supp. 621, 639 (N.D.Ill., 1963), aff'd mem. 376 U.S. 782, 84 S.Ct. 1134, 12 L.Ed.2d 83 (1964).

It was shown in the case at bar that the transmission was "rapid" in that plaintiff distributed printed forms with blank spaces to be filled in with late information supplied by telephone, and that such information was intended to be received and was received by persons engaged in *gambling* activities.

Horace Boone testified that he had been a bookmaker in Petersburg, Virginia, and that during the past seven or eight years he frequently had placed long distance calls to plaintiff, Angelini's telephone number in Chicago, and that he did so in order to obtain odds for use in his bookmaking. He paid $50 a week for this service in addition to the charge for the printed schedules. Boone was known to Angelini as "Antioch" and he testified that this name purported to identify the town in Illinois from which he was calling. Other geographical names appearing on the list of plaintiff's subscribers included "Cicero," "Decatur," "Des Plaines," "Maywood," "Lockport," "Peoria," "Skokie," "Rock Island" and "Quincy," all of which are the names of cities or communities in Illinois. Most, if not all of those calling from these stations, called from locations beyond the state limits of Illinois.

Pursuant to warrants, FBI agents conducted a search of plaintiff's premises on March 28, 1968, and again on April 4, 1968.

Plaintiff argues that Ill.Rev.Stats. Ch. 38, § 28–1(a) (10) does not apply. This section reads, in part:

"(a) A person commits gambling when he: (10) knowingly transmits information as to wagers, betting odds, or changes in betting odds by telephone * * * or knowingly installs or maintains equipment for the transmission or receipt of such information; except that nothing in this subdivision (10) prohibits transmission or receipt of such information for use in news reporting of sporting events or contests."

The testimony of Boone and Levine shows that plaintiff's information was knowingly transmitted to professional bookmakers (Boone) and gamblers (one Harry S. Levine). Rapid transmission of plaintiff's information was also shown by Boone's testimony that he would call as often as three times a day for "late changes." Also, during a football season, Levine would call as many as eight times a week. Furthermore, the plaintiff testified that whenever he felt odds on a particular sporting event had changed, he would change the worded message even though there was as little as an hour remaining before the event.

We think the dissemination of information as was done by plaintiff to bookmakers and gamblers in a form primarily for use by them and of little value to the general public, is subject to the power of the states to regulate professional gambling. " 'The nature of the materials is, of course, relevant as an attribute of the defendant's conduct, but the materials are thus placed in context from which they draw color and character. A wholly different result might be reached in a different setting.' " Ginzburg v. United States, 383 U.S. 463, 475, 86 S.Ct. 942, 950, 16 L.Ed.2d 31 (1965).

■ We agree with the conclusion of law of the District Court that plaintiff's activities hereinbefore described violated

the provisions of Ill.Rev.Stat., Ch. 38, § 28–1(a) (10). It is clear that the dissemination of such information is not, as plaintiff claims, a "constitutionally protected act." Telephone News System, Inc. v. Illinois Bell Telephone Co., *supra,* 220 F.Supp. at page 639.

Plaintiff has raised numerous additional points which we have considered and which we reject. We shall briefly comment on several.

Contrary to plaintiff's brief, there was no admission by anyone that Angelini was the subject of illegal eavesdropping, nor any indication that any evidence obtained thereby was used before or during the trial. A letter from the Assistant United States Attorney stated "We have been advised that the following listed individuals were not present at, or participated in, conversations overheard in any electronic surveillance conducted by the FBI in Chicago: Donald Angelini aka Don Angel."

■ Furthermore, as to the logs of four overhearings where Angelini's name was mentioned and which were examined by the trial court in camera, it appears that the latest of these was five years old and had no bearing on the case at bar. It further appeared that no conversation of Angelini "was at any time overheard by electronic surveillance." We approve the action of the District Court in denying an adversary hearing on this issue.

Although making the assertion that regulation of the dissemination of gambling information pursuant to 18 U.S.C. § 1952 violates the First Amendment, plaintiff has cited no cases to support that argument. In fact, this Court has held to the contrary. United States v. Lookretis, 385 F.2d 487, 489 (7 Cir., 1967), vacated on other grounds, 390 U.S. 338, 88 S.Ct. 1097, 19 L.Ed.2d 1219 (1968).

■ Plaintiff asserts his Fifth Amendment rights were violated because he had to bring a civil action to enjoin the removal of his phones while a criminal complaint was pending which involved the same use of the telephone service. A similar contention was rejected in Telephone News System, Inc. v. Illinois Bell Telephone Co., 220 F.Supp. 621, 628 (N.D.Ill., 1963).

■ Plaintiff contends that unpublished Illinois Bell tariffs may not be used as the basis for violations of federal law, particularly 47 U.S.C. §§ 203, 501 and 502. This is a civil action, therefore we do not address ourselves to the question of criminal penalties. However, violations of unpublished tariffs have frequently been the basis for termination of telephone service. Palma v. Powers, 295 F.Supp. 924, 931, 940 (N.D.Ill., 1969); McBride v. Western Union Tel. Co., 171 F.2d 1 (9 Cir., 1948).

It is plaintiff's assertion that it was error for the District Court to deny a motion to suppress evidence derived from the search warrants. Applying the test indicated in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) as clarified by Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968), we approve the action of the District Court.

■ Plaintiff asserts the use here of 18 U.S.C. § 1952 repeals 18 U.S.C. § 1084 (a). Once again in this civil action, we do not decide questions relating to criminal penalties. Likewise, 18 U.S.C. § 1084 is not intended to pre-empt the field. Delaware Sports Service v. Diamond State Telephone Company, 241 F. Supp. 847, 850–852 (D.Del., 1965), aff'd mem. 355 F.2d 929 (3 Cir. 1966), cert. den. 385 U.S. 817, 87 S.Ct. 38, 17 L.Ed. 2d 55 (1966).

We hold the plaintiff was not deprived of any rights or privileges contrary to the First Amendment of the Federal Constitution. None of the findings of fact made by the District Court are clearly erroneous. We concur in the conclusions of law.

The judgment of the District Court is
Affirmed.