**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard BUONOMO, Defendant-**
**Appellant.**

**No. 17823.**

United States Court of Appeals,
Seventh Circuit.

April 12, 1971.

Rehearing Denied May 10, 1971.

---

Robert S. Bailey, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Chicago, Ill., for plaintiff-appellee. John Peter Lulinski, Jeffrey Cole, Michael D. Marrs, Asst. U. S. Attys., of counsel.

Before SWYGERT, Chief Judge, KNOCH, Senior Circuit Judge, and KILEY, Circuit Judge.

KNOCH, Senior Circuit Judge.

Defendant-appellant, Richard Buonomo, appeals from conviction in a jury trial, on an indictment charging him

(and five named co-conspirators) with conspiracy to violate Title 18, U.S.C. §§ 2312 and 2314 by interstate transportation of stolen motor vehicles and counterfeit motor vehicle title documents.

All six defendants were charged in the conspiracy count, Count I. The individual defendants were charged in Counts II thru VII, relating to six individual stolen automobiles. This defendant was charged in Count IV.

One of the co-defendants, Pasquale Accetura died before trial. Four others pleaded guilty.

Defendant-appellant was sentenced to serve five years on each of the two counts in which he was named, to run consecutively to each other and to the sentence which defendant was then serving on a prior conviction based on his plea of guilty.

The defendant raises five issues under the Fourth and Fifth Amendments to the Constitution.

He contends:

(1) his conviction on the conspiracy count is barred by the provisions against double jeopardy;

(2) the evidence was insufficient to support a guilty verdict on Count IV;

(3) his trial on Count IV was prejudicially affected by the evidence introduced to prove the conspiracy count;

(4) evidence was erroneously admitted which was secured through an invalid search warrant issued on a constitutionally insufficient complaint; and

(5) evidence was erroneously admitted which had been seized in the execution of the aforesaid search warrant despite the fact that it was not particularly described therein.

### I

On February 14, 1966, defendant pleaded guilty in Case Number 65 CR 801 in which he and five co-defendants, including the deceased Pasquale Accetura (also charged in this indictment) were accused of a similar conspiracy to violate Title 18 U.S.C. §§ 2312, 2313 and 2314, involving interstate transport of stolen motor vehicles and counterfeit motor vehicle title documents.

Defendant contends that there is some overlapping in dates in the listings of overt acts in the two indictments, pointing out that the 1965 indictment alleges a conspiracy covering the period from in or about April 1964 to the date of the indictment, November 12, 1965, with overt acts occurring as late as July 20, 1965, while the second indictment covers a conspiracy beginning in or about July 1965, with overt acts occurring as early as the "summer" of 1965. The last specific date in the 1965 indictment, however, precedes the first specific date in the 1968 indictment.

Defendant argues that a comparison of the two indictments supports his view. Yet defendant did not raise the issue of double jeopardy before the government had rested, if, in fact, it was raised that early in the trial. The record before us shows only that a motion for judgment of acquittal, made at the close of the government's case, was denied, without disclosing the basis for the motion. It was clearly raised only in defendant's Motion for New Trial and/or in the Alternative for Arrest of Judgment, filed eight days after the trial. The government contends that absent a timely claim, the defense of double jeopardy is deemed to be waived. Barker v. Ohio, 6 Cir., 1964, 328 F.2d 582, 584 and cases there cited.

■ Constitutional immunity from double jeopardy is a personal right which if not affirmatively pleaded at the time of trial will be regarded as waived. Ferina v. United States of America, 8 Cir., 1965, 340 F.2d 837, 838–839, and cases there cited, cert. den. 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284.

As the court said in Rollerson v. United States of America, 1968, 132 U.S.App.D. C. 10, 405 F.2d 1078, 1081, (judgment vacated and remanded on other grounds 394 U.S. 575, 89 S.Ct. 1300, 22 L.Ed.2d 557) the Trial Judge should be alerted to the possible superfluity of the impending

trial so that if the claim proved to have merit the time and effort of a trial might have been saved. As defendant is relying solely on the indictment to prove the identity of the earlier charge, the facts necessary to the formulation of his claim were known to him prior to trial.

■ Defense of second jeopardy may not be raised for the first time by motion for a new trial. United States of America v. Reeves, D., D.C., 1968, 293 F.Supp. 213, 214, relying on Brady v. United States of America, 8 Cir., 1928, 24 F.2d 399, 405 and cases there cited.

■ Although not obliged to do so, we have nevertheless considered the tardily raised issue of double jeopardy. Offenses, even arising out of the same general course of criminal conduct, do not become the same for purpose of a double jeopardy claim unless the evidence required to support a conviction on one indictment would have been sufficient to warrant a conviction on the other. United States of America v. Kramer, 2 Cir., 1961, 289 F.2d 909, 913; United States of America v. Bruni, 7 Cir., 1966, 359 F.2d 807, 809, cert. den. 385 U.S. 826, 87 S.Ct. 59, 17 L.Ed.2d 63.

The government's argument, which we find persuasive, is that defendant and Accetura were the common nuclei of two separate conspiracies with two different sets of co-conspirators to transport stolen vehicles to different destinations, and that this is not one continuous conspiracy involving members who drop out early and others who join late, where all do not know each other, but are nevertheless co-conspirators.

A difficulty inherent in determining whether double jeopardy applies, however, is indicated by defendant's own conjectures as to the evidence which would have been offered had defendant chosen to stand trial on the first indictment.

Defendant conjectures that evidence submitted in this trial which had in fact been discovered prior to the return of the first indictment would have been offered to prove the conspiracy there charged had defendant not pleaded guilty. In support of this theory our attention is invited to the proof in this case where evidence was adduced concerning events beginning as far back as the summer of 1964 when government witnesses Richard Nielsen and William Hickok testified they met with Accetura and defendant, Nielsen's testimony respecting receipt of counterfeit titles from Accetura at defendant's home in or about May 1965, and Hickok's testimony on defendant's use of his garage in the summer of 1964.

However, the overt acts charged in the two indictments are not the same, and most of those alleged in the earlier indictment clearly occurred prior to those alleged in the later indictment. The substantive offenses are totally different.

Defendant refers to the execution of a search warrant and seizure of counterfeit titles from defendant's home on October 25, 1965 within the period alleged in the first indictment.

In oral argument government counsel noted that this search occurred about two weeks prior to return of the indictment of November 12, 1965. The warrant was based on a State charge. To have had the evidence prepared and ready for the earlier indictment would argue an extremely high degree of federal-state co-operation. The government asserts that it was the 1965 search which provided evidence of the second conspiracy covered by the later indictment of 1968.

Defendant also argues that his own function in each of these operations was identical in that he and the deceased Accetura provided titles for the stolen vehicles and prepared them for sale in other states without actually transporting the vehicles or handling the actual sales. Defendant, therefore, sees no significance in the fact that the first indictment charged transport to and resale in the State of Alabama exclusively with one set of co-conspirators in addition to Accetura, while the second indictment charged transport to and resale in the State of Ohio with the assistance of a totally different set of co-conspirators in addition to Accetura. We do not

share that view. Nor can we agree with defendant that the absence of overt acts after the return of the earlier indictment supports the theory of a single conspiracy.

Defendant relies on United States of America v. Varelli, 7 Cir., 1969, 407 F.2d 735 for the proposition that the element of agreement is primary and the gist of the crime. We agree. However, here, as in *Varelli,* no overall general scheme is disclosed. Defendant sees United States of America v. Palermo, 7 Cir., 1969, 410 F.2d 468, as dispositive of this case. There this Court held that the agreement constituting the conspiracy charged in the second indictment was the same agreement which constituted the conspiracy charged in the first indictment, and reversed conviction on the second indictment.

The government distinguishes *Palermo* as dealing with a single conspiracy to extort money from Riley Management Company during the years 1964 and 1965 in violation of the Hobbs Act 18 U.S.C. § 1951. From the evidence at the two trials, the court found a single conspiracy, as distinguished from separate agreements in United States of America v. Varelli, *supra,* 407 F.2d p. 743 where four men constituted the common nucleus of separate conspiracies to hijack shipments. In *Varelli,* too, there was a similarity of object and mode of operation.

In *Palermo,* Judge Kerner, speaking for this Court, quoted United States of America v. Kissel, 1910, 218 U.S. 601, 607, 31 S.Ct. 124, 54 L.Ed. 1168, to the effect that if the agreement contemplated bringing to pass a continuous result which would not continue without the continuous co-operation of the conspirators to keep it up, and there was such continuous co-operation, it would be a perversion of natural thought and language to call that continuous co-operation "a cinematographic series of distinct conspiracies" rather than a single one.

While we do not have evidence from the prior conviction, still, as the government argues, we would expect (but do not find) in the trial of the second indictment, some evidence of one overall conspiratorial agreement, some indication of interrelationships between the defendants in the 1965 and the 1968 indictments, some awareness in the 1968 defendants of the 1965 defendants.

We are asked by the defendant to believe that a single conspiracy was divided into two distinct and separate groups stealing vehicles by similar means and transporting them to different places with each group completely ignorant of the others' activities. We find the defendant's argument unconvincing. We are satisfied that here as in Kotteakos v. United States of America, 1964, 328 U.S. 750, 752, 66 S.Ct. 1239, 90 L.Ed. 1557, more than one conspiracy was executed through common key figures.

Defendant contends that no difference to the operation of the bar of double jeopardy arises from the fact that defendant was not acquitted but convicted in the earlier case. In effect, defendant argues he secured by his plea of guilty the favorable result of a sentence of five years which he has almost served instead of the fifteen years the government is still attempting to impose.

Defendant also relies on Braverman v. United States of America, 1942, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 where the Supreme Court refused to pass on the issue of double jeopardy because the indictment to which the defendant had pleaded guilty was not a part of the record, indicating that double jeopardy is not limited to cases of acquittal. We have no quarrel with that principle. Both sides rely on Blockburger v. United States of America, 1932, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306, for the rule that the test to be applied to determine whether there are two offenses or only one is whether each requires proof of a fact which the other does not. We conclude that the defendant-appellant was not subjected to double jeopardy. See also United States of America v. Barzie, 2 Cir., 1970, 433 F.2d 984, 985, cert. den. 401 U.S. ——, 91 S.Ct. 1194, 27 L.Ed.2d 324 (March 22, 1971).

## II

Apart from his views on the conspiracy count, defendant contends that the evidence adduced at the trial was insufficient to support his conviction of the substantive charge in Count IV which concerned interstate transport of a specific stolen 1964 tan Chevrolet automobile from Chicago, Illinois, to Cleveland, Ohio, on or about September 2, 1965, in violation of Title 18, U.S.C. § 2312.

Defendant analyzes the evidence of the numerous witnesses asserting that none of it connected defendant with this stolen automobile as principal or abettor.

The government does not contest defendant's definition of an aider and abettor as one in some way associated with the venture, participating in it as in something which he wishes to bring about, seeking by his action to make it succeed. Both parties rely on Judge Learned Hand's opinion in United States of America v. Peoni, 2 Cir., 1938, 100 F.2d 401, 402, that all the words used, even the most colorless, "abet", carry an implication of purposive attitude toward the venture. See United States of America v. Platt, 7 Cir., 1946, 156 F.2d 326, 327, where this Court said that it was unnecessary to prove defendant actually stole the merchandise involved where he was a direct accomplice in the illegal venture; United States of America v. Alexander, 7 Cir., 1955, 219 F.2d 225, 227. The government's own analysis of its evidence, which we find persuasive, shows a line of proof which does tie in defendant with the venture.

The Supervisor, Automobile Registration, State of Illinois, testified that he was unable to find any record in his files for this vehicle, despite the existence of a purported certificate of title for a 1964 Chevrolet serial number 41847–J–116303 which was admitted in evidence as government's exhibit 4–C.

An employee of the Clerk of Common Pleas Court, Cuyahoga County, Cleveland, Ohio, who was in charge of the Auto Title Department, testified he found that certificate in his files. The Clerks of Courts, Wood County, Ohio, testified that it was usual and ordinary practice in Ohio to retain such out-of-state titles for automobiles being retitled with Ohio titles. Wilma G. Harman testified that her 1964 Chevrolet had been stolen from her home in Chicago on September 2, 1965. She identified another government exhibit (4–A) as the title to her automobile.

FBI Agent John T. Aldhizer related his inspection of an automobile in Cleveland, Ohio. He testified that he found two identification numbers: 41847–J–116303 and J–127564. Government exhibit 4–A, the title to the stolen Harman car was J–127564.

Co-defendant Richard Nielsen testified to meeting with defendant and Pasquale Accetura. He described several meetings with Accetura where he would supply the latter with the make and identification numbers so that a counterfeit title could be furnished. He said he once picked up a number of such titles from Accetura at defendant's home. Defendant argues that this implicates Accetura alone. We cannot agree.

Nielsen testified that he and William Hickok stole the Harman automobile, that he was already armed with a counterfeit title for a 1964 Chevrolet obtained from Accetura, government's exhibit 4–C, and changed the identification numbers on the car to match the certificate before delivering the automobile to one Danny Jacobson in Naperville, Illinois.

Defendant sees the testimony of Nielsen that he acquired this particular title from Accetura as exculpatory of defendant. However, the tenor of the evidence as a whole is that in these operations, counterfeit titles were initially made by the defendant.

William Hickok testified that he had seen defendant type up titles which purported to prove ownership of automobiles. He said he was employed by defendant to steal automobiles on order. He testified to going with Richard Nielsen to defendant's home to pick up coun-

terfeit titles for automobiles. He said he received such titles from defendant. He remembered stealing the Harman automobile with Nielsen around September 1, 1965.

Jerome Miller testified that he was employed by Daniel Jacobson to drive automobiles to Ohio and remembered driving a 1964 Chevrolet to Cleveland from Jacobson's garage where he was given a title and keys. He recognized government's exhibit 4–C as the counterfeit title he was given. Earlier Chicago Police Officer William Alexander had testified to execution of a search warrant at defendant's home. The search disclosed Illinois and Indiana automobile titles, certificates of origin, notary public seals, key planks, a key gun machine, locks and automobile license plates. He identified, as seized in the search, government's exhibit 101, two of the Illinois titles; exhibits 302 and 303, a book marked "Auto Key Code Book", a key gun machine and three boxes of blank keys.

FBI Agent Clarence E. Bohn testified as an expert in the examination of questioned documents. He made a detailed comparison of Exhibit 101, purported Illinois titles found in defendant's home, and exhibit 4–C, the counterfeit title for the stolen Harman automobile. He testified that all these documents were prepared by the same printing plate.

Considering this evidence in the light most favorable to the government, as we must on appeal, Glasser v. United States of America, 1942, 315 U.S. 60, 80, 62 S. Ct. 457, 86 L.Ed. 680, we are satisfied that the jury was justified in drawing the inference that defendant was directly connected to the theft of this automobile, that he provided the counterfeit title for it in advance of the actual theft and thus participated in the venture with a view to achieving its success.

### III

In the alternate, defendant contends that his conviction under Count IV was the result of improper and prejudicial admission of evidence under the conspiracy count.

We are not faced here, as the government points out, with a claim of improper joinder of offenses.

The government argues, in turn, that defendant is in a poor position to complain of the number of witnesses and the mass of testimony received, as the defense declined a request for a stipulation which would have eliminated some 28 witnesses who would testify only that particular automobiles were stolen in Chicago and recovered in Ohio on certain dates, with certain serial plates on the cars, and that serial plates found on the automobiles belonged to other parties, and that these automobiles were, or attempted to be, sold in Ohio. As the Trial Judge said, these would be witnesses to facts later developed by other witnesses. Counsel for the government stated that none of these witnesses would be pointing out the defendant. He offered further, to meet defense objection that such stipulations put the defendant in a "bad light" with the jury, to include a paragraph that the defendant was in no way to be prejudiced by the fact that he so stipulated. Government counsel had certified copies of the documents to support such testimony sought to be stipulated, e. g. valid title papers showing the automobile to be in the ownership of the witness whose testimony would be the subject of stipulation.

■ We find no basis for defendant's complaint that he was prejudiced by the admission of this evidence.

### IV

It is defendant's view that motion to suppress the evidence produced by execution of the search warrant was improperly denied. Defendant sees the supporting affidavit as failing to meet the criteria of Spinelli v. United States of America, 1968, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637.

Defendant complains that the affiant, Chicago Police Officer William Alexander, relied on information from an in-

formant who is described only as having supplied reliable information in the past with no details to guide the State Court Judge who issued the search warrant.

*Spinelli* reaffirms the standards of Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. In *Aguilar* (p. 114, 84 S.Ct. 1509) the Court held that the issuing magistrate must have some of the underlying circumstances under which the informant acquired his knowledge and some of the underlying circumstances on which the affiant bases his faith in the reliability of the informant. In that case the affiant characterized the informant only as "credible" not as the source of reliable information in the past.

In *Spinelli*, 393 U.S. p. 415, 89 S.Ct. 584, these underlying circumstances were lacking. There was no indication that the informant had personal knowledge. The affiant had observed the defendant engaged only in innocent activity.

█ Here Officer Alexander said the informant related being with defendant whom he knew, in defendant's home, the preceding day, where he observed a large quantity of counterfeit motor vehicle titles from Illinois, Indiana and Michigan and where he, himself, was offered such titles for sale. We find in this affidavit sufficient support for the establishment of probable cause and issuance of the warrant. See United States of America v. Ventresca, 1965, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 where the Court holds that recital of some of the underlying circumstances in the affidavit is essential, but that where these circumstances are detailed, where reason for crediting the source of information is given and where a magistrate has found probable cause, reviewing courts should not invalidate the warrant by hypertechnical rather than commonsense interpretation. Angelini v. Illinois Bell Telephone Co.,

7 Cir., 1969, 418 F.2d 111, 115, cert. den. 397 U.S. 1040, 90 S.Ct. 1361, 25 L.Ed.2d 651.

Defendant interprets the informant's reported statement as deficient in failing to state by whom he was offered the titles. Defendant sees an inherent danger here in that the informant may have been offered the titles by someone else, possibly Accetura. The informant is reported as saying he was with defendant in defendant's home and was offered the titles for sale. No other person is mentioned. We find defendant's interpretation unreasonable.

V

█ Defendant also contends that at least items not specifically described in the warrant should have been suppressed. These included blank keys, a key machine, an automobile code book, notarial seals, and a "no lien" rubber stamp. Defendant sees failure to suppress these items as giving new life to the historical evil of the general warrant. These items, however, were instrumentalities of crime, contraband seized in the course of a lawful and not an unreasonable or general exploratory search. Abel v. United States of America, 1960, 362 U.S. 217, 238, 80 S.Ct. 683, 4 L.Ed.2d 668; Johnson v. United States of America, 1961, 110 U.S.App.D.C. 351, 293 F.2d 539, 540; United States of America v. Teller, 7 Cir., 1968, 397 F.2d 494, 497, cert. den. 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273. See also United States of America v. Teller, 7 Cir., 1969, 412 F.2d 374, 379, and Alderman v. United States of America, 1969, 394 U.S. 165, 177 Ftn. 10, 89 S.Ct. 961, 22 L.Ed.2d 176.

After careful consideration of all points and authorities to which our attention has been drawn, we conclude that the judgment of the District Court must be affirmed.

Affirmed.