## BOYETT v. UNITED STATES.
### No. 6098.

Circuit Court of Appeals, Fifth Circuit. April 8, 1931.

er person was indicted with him. Not a single exception was reserved at the trial, but we are asked to notice plain error appearing on the record. Of course, we may do so, in a proper case, under the provisions of our rule 11 and under the provisions of 28 USCA § 391. It is but fair to say that appellant was not represented in the District Court by the same counsel who appeared on this appeal. As to the occurrences that we are asked to notice as plain error, we quote literally from the bill of exceptions as follows:

"The jury retired to the jury room and after apparently an hour came back into the Court and through their Foreman, asked additional instructions from the Court as to whether the defendant would be guilty of the charges in the indictment if he (the defendant) knew that the still described by the government witnesses was on the defendant's property, and he (the defendant) made no effort to stop it.

"Whereupon, the Court further charged the jury:

" 'If the defendant knew that the still was in this house, on his property, as stated by the Government witnesses, and in operation there, and took no steps to stop it, he would be equally guilty with the person, or persons, so operating the distillery, under the charge the Court has previously given you in regard to principal and accessory.'

"Whereupon the jury retired for some time and returned into Court and reported that they were unable to agree upon a verdict. Whereupon, the Foreman stated:

" 'Your Honor, it may be that if we had further instructions, we might be able to reach a verdict.'

"Whereupon, the Court replied:

" 'I am afraid there are some of you who do not want instructions, and are not willing to follow the instructions given by the Court.

" 'It does not seem to the Court that there should be any great difficulty in arriving at a verdict in this case.

" 'Mr. Marshal (addressing the Marshal of the Court): You can prepare supper for this jury and a place for them (to be made confortable) for the night, and after supper you may permit them to consider their verdict until bedtime, and then permit them to retire until morning, and after they have had breakfast, return them to their jury room for further consideration of their ver-

Wm. C. Pierce and W. K. Zewadski, Jr., both of Tampa, Fla., for appellant.

W. P. Hughes, U. S. Atty., and William A. Paisley, Asst. U. S. Atty., both of Jacksonville, Fla.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

Appellant was convicted of unlawful manufacture of intoxicating liquor and possessing liquor and apparatus designed for manufacture of same, and was sentenced to serve two years in the penitentiary. No oth-

dict. Be sure and see that they are made comfortable.'

"Whereupon, the jury again retired and in about five minutes thereafter returned to the Court and announced that they had agreed upon a verdict. * * * "

The government depended for conviction entirely upon circumstantial evidence. A still in full operation was found on appellant's farm in Pasco county, Fla., together with a quantity of mash and liquor, in a building situated about 60 yards from his residence, but inclosed by a barbed-wire fence, which ran across a path leading to appellant's door. Appellant took the stand and testified he had rented the building where the still was discovered to a man named J. Q. Smith and that he had nothing to do with the still and did not know it was there. He was corroborated as to having rented the building by two witnesses, and three other witnesses testified to having seen Smith in and about the building. There was no one in charge of the still when it was discovered and no arrests were made at that time.

 It may be conceded that when a still is in operation upon the premises of a person and facts are disclosed to the jury clearly indicating his knowledge and consent, a presumption of guilt as an accessory may arise, in the absence of other evidence sufficient to exonerate him or to create a reasonable doubt. However, mere knowledge that an offense is being committed is not equivalent to participation with criminal intent. Consent is a necessary element and must also be shown. While this may be inferred from all the circumstances disclosed, it is always a question for the jury. In this case a close question of fact was presented, and it is evident that there was considerable doubt in the minds of some of the jurors as to appellant's guilt. He was entitled to the benefit of any reasonable doubt existing, not only in the minds of all the jurors, but also in the mind of any individual juror.

 A federal judge is vested with considerable discretion in commenting on the facts before the jury and in reviewing the evidence, provided he does so fairly and presents both sides of the case, and also makes it clear to the jury that they are the sole ultimate judges of the facts, of the credibility of the witnesses, and of the weight and sufficiency of the evidence. However, when it is apparent that doubt exists in the minds of the jury, after having received the charge of the court and retired to deliberate, in delivering additional charges the judge should exercise caution and refrain from indicating to the jury his own opinion as to the guilt or innocence of the defendant. It is also his duty to refrain from any intimidation or coercion of the jury. Kesley v. U. S. (C. C. A., 5th Circuit) 47 F.(2d) 453, decided March 5, 1931; Garst v. U. S. (C. C. A.) 180 F. 339; Oppenheim v. U. S. (C. C. A.) 241 F. 625; Lewis v. U. S. (C. C. A.) 8 F. (2d) 849.

 The charge of the court above quoted took away from the jury any question as to appellant's consent to the operation of the still and made it imperative that a verdict of guilty should be returned if the jury believed he had knowledge of the still and took no steps to prevent it. Consent is not necessarily to be implied from the fact that one having knowledge that an offense is being committed does not report it to the proper authorities or take other steps to prevent it. There are many reasons that might be stated, sufficient no doubt to the mind of a person so situated, that would prevent his taking action although he objected instead of consented. The question of knowledge and consent was for the jury. Furthermore, when the jury came into court the second time the judge made it very clear to them that he believed some of them were derelict in their duty and that he intended to punish them by keeping them sequestered indefinitely until they had reached a verdict. This tended to intimidate and coerce them.

The charges and remarks of the court, above quoted, had a tendency to deprive appellant of a fair trial and present plain error on the record, requiring a reversal, which we feel compelled to notice.

Reversed and remanded.