**UNITED STATES of America**

v.

**Fannie ALEXANDER.**

No. 11238.

United States Court of Appeals, Seventh Circuit.

Jan. 14, 1955.

Rehearing Denied March 16, 1955.

Julius Lucius Echeles, Chicago, Ill., Frank W. Oliver, Chicago, Ill., for defendant-appellant.

Robert Tieken, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

Fannie Alexander, the defendant, was convicted in a trial to the court on three counts of an indictment which charged her with the purchase, sale and transportation, and concealment of certain narcotics knowing the same to have been imported into the United States contrary to law in violation of 26 U.S.C.A. § 2553 (a), 26 U.S.C.A. § 2554(a), and 21 U.S. C.A. § 174, respectively. In these three counts the defendant was charged jointly with her sister, Marie Walker. The sister pleaded guilty to each of these three counts and to six other counts which charged her, with others than the defendant, of similar violations on two prior dates. The Government's theory as to the defendant is that she aided and abetted her sister, Marie Walker, in these violations and could therefore be charged as a principal, pursuant to 18 U.S.C.A. § 2(a).

The sole question presented in this appeal is whether or not there was sufficient evidence to sustain the court's finding that the defendant was guilty as a principal by having aided and abetted her sister in the violations charged.

The defendant's counsel insists that the aiding and abetting, to be within the terms of 18 U.S.C.A. § 2(a), must be conscious and intentional—that mere knowledge that a crime is being committed is not enough. The defendant cites Boyett v. United States, 5 Cir., 48 F.2d 482, to support his contention. We agree generally with this statement of the law, but

we must point out that in the case cited the Court of Appeals reversed the conviction because the trial court had given an erroneous instruction to the jury as to the consequences of mere knowledge of the fact that a crime was being committed. In the Boyett case the court did say, 48 F.2d at page 484: " * * * mere knowledge that an offense is being committed is not equivalent to participation with criminal intent. Consent is a necessary element and must also be shown." But the court there added that the necessary consent might be inferred from all the circumstances disclosed, that it was always a question of fact for the jury.

So, in the instant case, the question of whether this defendant consciously and knowingly aided and abetted her sister in the admitted violations by her sister, was a question of fact for the trial judge to determine. The defendant was found guilty. Therefore, the trial judge necessarily found that the defendant did knowingly and intentionally aid and abet her sister in the commission of these offenses.

██ In United States v. Carengella, 7 Cir., 198 F.2d 3, 7–8, this court said: "We must regard the government's evidence in the light most favorable to it, and we must accept same as true, together with all reasonable inferences which the jury may have drawn therefrom. * * *" This is, of course, equally true where, as in the instant case, the trial court found the facts. With this rule in mind we have no hesitation in saying that the evidence in the instant case supported the defendant's conviction.

The defendant and her mother occupy a first floor apartment in a four story apartment building located at 4323 Forrestville Avenue in the City of Chicago. A second floor apartment is occupied by the defendant's sister, Marie Walker, and the sister's four children. One of the sister's daughters sleeps in the defendant's apartment regularly and Marie Walker and all of her children eat most of their meals in the defendant's apartment with the defendant and her mother. The defendant's mother-in-law owns the apartment building.

On April 7, 1953, the date of the alleged narcotic violations here in question, a third floor apartment in the building was vacant. The defendant assisted in the renting of vacant apartments and in looking after the upkeep of the apartment building. There was no telephone in Marie Walker's second floor apartment but she regularly used the phone in defendant's apartment and spent much of her time in that apartment.

There was evidence in this case to support findings by the trial court that about noon on April 7, 1953, Norris M. Durham, a federal narcotics agent, called the defendant's telephone number and the call was answered by the defendant. When the call was made another narcotics agent, James T. Fields, was in the telephone booth and listened to Durham's part of the conversation. When the defendant answered the telephone Durham asked for Marie. The defendant told him that Marie was not there and asked who was calling. Durham told the defendant he was, "Herman, the fellow from Cleveland," and the defendant said, "Oh, yes, I remember you from last week." Durham then told her he "would like to get three shirts," and the defendant said: "Well, you come right on out. Marie will be here when you get here."

Pursuant to this conversation Durham went out to the defendant's apartment and when he arrived both the defendant and her sister, Marie Walker, were there. Durham then, in the presence of the defendant, gave Marie Walker $600 in Government money which was wrapped up in brown wrapping paper. The defendant was then sitting only six or seven feet from the point where her sister was given the money and there was nothing to obstruct her view of the transaction. When the agent gave the sister the money she folded back the brown paper and riffled through the money but did not count it. The sister, Marie Walker, then left the defendant's apartment for a few minutes. While she was gone

Durham talked to the defendant and she told him that she was the person who had talked to him on the phone. The defendant then asked Durham if he had seen "Buda Red." Durham said he told the defendant that "he did not see much of him" and that "he was not very reliable and a dangerous man to fool with." And then the defendant said: "Yes, you can't take any chances with a man if he is not going to be reliable."

Marie Walker then came back into the room and gave Durham three pieces of heroin wrapped in brown paper. The heroin was in glassine envelopes. Durham then called by phone for other narcotics agents to join him at the apartment. When the other agents arrived Durham identified himself to Marie Walker and to the defendant as a federal narcotics agent. The defendant then said to him: "Do you have to do this to us?"

In searching the defendant's apartment the narcotics agents found, in a table drawer in the defendant's living room, a quantity of the glassine envelopes like those used as containers for the heroin which had been sold to Durham. The money Durham paid for the narcotics was then found by the agents in the bathroom of the vacant third floor apartment. When the agents started their search, the defendant asked them if they had a warrant.

If the defendant answered the telephone, talked to the narcotics agent, knowingly accepted from him an order for her sister for heroin, and transmitted the order to her sister who then, pursuant to the order, made the sale, the defendant thereby aided and abetted in the unlawful sale within the meaning of 18 U.S.C.A. § 2(a). To aid and abet another in the commission of a crime one must associate himself with the venture and participate in it, seeking by his action to make it succeed. United States v. Peoni, 2 Cir., 100 F.2d 401, 402.

It is inconceivable in the light of the evidence in this record that the defendant did not know of the narcotics business in which her sister was engaged. A woman who had no knowledge of what was taking place would certainly have had her curiosity aroused by Durham's telephone call. If the defendant were innocent of all guilty knowledge she would wonder what Durham meant when he said he wanted "to get three shirts." She would wonder at a man from Cleveland wanting to come out and see her sister and wonder what he wanted to see her sister about, especially when the same man had been out to her home to see her sister just the week before. Yet the defendant asked no questions and according to her testimony she paid no attention to the transaction between Durham and her sister after he arrived. The defendant would have the court believe that when the money and the heroin changed hands Durham and her sister were in such a position that the defendant's view of them was obstructed. But Durham testified that they were in plain sight of the defendant and not more than five to seven feet distant from her. The defendant's conversation with Durham concerning "Buda Red" would clearly indicate that she was aware that some activity in which Durham and her sister were participating was "dangerous" and did involve "chances".

The fact that glassine containers for heroin were found by Durham in a table drawer in the defendant's living room was also significant. Her sister certainly would not have kept the containers there if the defendant had not known of the business in which the sister was engaged. The defendant sooner or later would have seen the containers and would have wanted to know about them. Defendant claimed that she had never seen the envelopes and that they did not belong to her.

The reaction of the defendant when the other narcotics agents came into the apartment and Durham identified himself as a narcotics agent also gives a basis for valid inferences of the defendant's guilty knowledge. The defendant

**228**

then said: "Do you have to do this to us?" And also: "Do you people have a warrant?" This would indicate that the defendant knew that she, as well as her sister, was in trouble for the narcotics violations. Yet she indicated no surprise by word or action. If she had not known of the traffic of her sister in narcotics it would have been only natural for the defendant to have shown surprise and shock upon learning of it.

From all the evidence in this case it can fairly be inferred that the defendant was fully aware of the narcotics offenses which her sister was committing in the defendant's apartment and over the defendant's telephone; that she wanted the traffic carried on; and that she willingly accepted and transmitted orders for narcotics and permitted her sister to use her telephone and apartment for that purpose. Under these circumstances we think the District Court properly found the defendant guilty.

The judgment is therefore affirmed.

FINNEGAN, Circuit Judge (dissenting).

"There can no great smoke arise, but there must be some fire" belongs with other bromides and copy-book maxims, but not to criteria for measuring evidence of guilt. Painting with bold, broad brush strokes the Government contends, here, that the evidence "establishes beyond doubt that the defendant aided and abetted her sister in the sale of narcotics." We are asked by the prosecution, to believe its evidence goes beyond even *reasonable* doubt. Apparently, the Government had doubt about this doubt, and for good reason on this flimsy record.

In my opinion the record is devoid of substantial evidence to support the conviction of "aiding and abetting." In this case it is much too easy to slip upon the rubble of "just what must have been," rather than pick our way between the sparse facts. I would reverse this conviction erected on treacherous sands of implication, insinuation and conjecture.