**Grady B. BURROUGHS, also known as Sam Grady Biggs, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 8387.**

United States Court of Appeals Tenth Circuit.

Aug. 31, 1966.

Joe A. Moore, Sapulpa, Okl., for appellant.

Bruce Green, Muskogee, Okl. (Paul E. Harper, Muskogee, Okl., on brief), for appellee.

Before MURRAH, Chief Judge, and SETH and HICKEY, Circuit Judges.

MURRAH, Chief Judge.

Appellant appeals from a conviction and sentence on a five count indictment, each count of which separately charged that the appellant knowingly and wilfully uttered and published a false statement or document with the intent to influence the Federal Housing Administration in violation of 18 U.S.C. § 1010.

Two points are made on appeal: (1) The trial court erred in instructing the jury that evidence of appellant's flight was corroborative of guilt of the offense charged after having admitted such evidence for a more limited purpose; and (2) The court improperly influenced the jury to return a verdict after it had indicated it was unable to do so.

The evidence bearing on the question of flight is vague and sketchy, but as we understand, it is to the effect that after appellant was indicted in September, 1962, he apparently forfeited bail, became a fugitive and was later surrendered by his attorney and bondsman in April, 1963. He apparently thereafter again became a fugitive, a warrant was issued, and he was again apprehended in June, 1964. When the testimony tending to show these facts was objected to on the grounds that it did not "go to the guilt or innocence of the defendant for this particular crime", the court ruled the evidence admissible to "show trend and conduct * * * and not on any basis whatsoever with reference to the guilt or the innocence of the defendant on the charges here before you." Whereupon, defense counsel stated, "I think the Court has answered it. I will withdraw the [objection]. The Court has cleared it up very fine." In the court's instructions the jury was told that "the evidence of flight is a legitimate ground for the inference of guilt, and if you find from the evidence beyond a reasonable doubt that the de-

fendant did flee, you should consider such evidence along with other evidence in the case in determining the defendant's guilt or innocence." At the conclusion of the court's instructions, defense counsel objected to "the instruction with reference to the evidence of the flight of the defendant."

We are not sure of the meaning of the court's first ruling on the evidence of flight as showing "trend and conduct". Unless the evidence bore some relevancy to guilt or innocence, we fail to discern any relevancy at all. But, the ruling of the court seemed to satisfy counsel, and no point of it is made on appeal. Even so, there was evidence from which the jury could find beyond a reasonable doubt that appellant did forfeit bail and leave the jurisdiction of the court after the charges against him. And, while the "probative value" of evidence of flight has been consistently doubted, i. e. see Wong Sun v. United States, 371 U.S. 471, 483, footnote 10, 83 S.Ct. 407, 9 L.Ed.2d 441; Miller v. United States, 116 U.S.App.D.C. 45, 320 F.2d 767, it has nevertheless been consistently held admissible as a "circumstance proper to be laid before the jury as having a tendency to prove his guilt." Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, and see Rivers v. United States, 9 Cir., 270 F.2d 435; Thompson v. Harry C. Erb Co., 240 F.2d 452; Rosetti v. United States, 9 Cir., 315 F.2d 86; Wigmore on Evidence, 3rd Ed., § 276, p. 115; and see State v. Neal, 231 La. 1048, 93 So.2d 554, citing Wharton's Criminal Evidence, Vol. 1, p. 414, § 205 (12th Ed. 1955).

█ Appellant complains of the failure of the court to define flight, i. e. see Wilson v. State, 96 Okl.Cr. 137, 250 P.2d 72, but no definition was requested. Appellant's objection to the instruction did not distinctly state the grounds therefor, hence was insufficient to bring to the court's attention the inconsistency in its ruling. But, in any event, the court had a perfect right to change its mind in the course of the trial, and since the instruction was a correct statement of the law, no error can come of it.

The contention that the jury was coerced to return its verdict is presented on these record facts. After the case was finally submitted to the jury at 5:00 o'clock in the afternoon, but before retiring, the court told them that "we have been here quite a while but I should like for you to organize and see if you can't reach a verdict within an hour. If you can't, and on request of the jurors, we can do something about it, but let's work for about another hour, will you please?" One hour twenty minutes later the jury returned to the court room, apparently on call of the judge. Addressing the foreman, the court stated, "Now the court does not want to know numerically how you stand at all and it would be improper for you to tell me * * * but up to now I take it you have not been able to arrive at a verdict?" The foreman answered "That's right." The court again addressing the foreman stated, "I might ask, in your judgment as foreman of the jury, are you of the opinion that you might if you had a little more time to consider it?" The foreman replied, "Well, for the last three ballots we have taken, we have been exactly the same." The court then proceeded to give the so-called Allen instruction:

> "Well, it's now 6:25. This is an important case, of course, for both sides and both sides have gone to a considerable amount of expense to bring this evidence to you, and as I said before, it is the hope in the administration of justice that we can arrive at a verdict in every case.
>
> "This jury is just as well qualified, just as intelligent, just as well equipped, to arrive at a verdict as another jury would be, and as I have said, if you were to hear the same evidence again or some other jury would be no better equipped to arrive at a verdict than this jury.
>
> "I believe that if you worked a little harder and a little longer that you might see the views, the minority

might see the views of the majority. I do not know how you stand. I have no interest in that at all. What the Court is interested in and what the public is interested in is the administration of justice in arriving at a verdict which is fair and just.

"I am going to ask you to go back and work a little longer, we will say until 7:00 o'clock. If you can't by that time, it would be the opinion of the court because of the importance of the case, because of the expense incurred, because of the expense yet to be incurred should you not get together, to probably recess the matter until in the morning and then let you go back to deliberations.

"You may not be able to arrive at a verdict, but it's important for both sides for you to arrive at a verdict if you can.

"We are here, you are here as jurors to do your duty as you see it and to settle these questions as best you can."

The "Allen" instruction, also sometimes called the "dynamite" or "third-degree" instruction, has been roundly criticized as an unwarranted invasion of the fact finding province of the jury. See Judge Brown dissenting in Huffman v. United States, 5 Cir., 297 F.2d 754; Judge Wisdom dissenting in Andrews v. United States, 5 Cir., 309 F.2d 127, and speaking for the court in Green v. United States, 5 Cir., 309 F.2d 852.

■■ We have repeatedly and only recently cautiously approved an instruction of this kind even to an apparently deadlocked jury, provided each juror is made to understand that he or she is free to follow his or her conscientiously held convictions, i. e. see Elbel v. United States, May Term 1966, 10 Cir., 364 F.2d 127; And see cases collected in Anno., 100 A.L.R.2d 177. In Elbel we took occasion to re-emphasize the traditional duty of the common law judge to guide and direct the jury toward a fair and impartial judgment in the form of a collective verdict. And see Tyler v. Dowell, 10 Cir., 274 F.2d 890, 897. This, of course, means that the court may with

propriety tell the jury that if they have not arrived at a verdict by a stated time, they should return to the court room for further instructions concerning whether they should deliberate further or be excused until the next day either in custody of the bailiff or under the admonitions of the court. It is also the proper function of the judge to admonish the jury that they should deliberate together in an atmosphere of mutual deference and respect giving due consideration to the views of the others in the knowledge that in the end their verdict must reflect the composite views of all. An admonitory statement in this tenor given before the jury retires to deliberate would be more appropriately influential and far less vulnerable to the charge of coercion.

But, in any event, it is one thing to recall the jury to beseech them to reason together, and it is quite another to entreat them to strive toward a verdict by a certain time. When these admonitions are considered in their context, they are subject to the clear inference that the judge was unduly anxious to conclude the lawsuit, and we think it entirely reasonable to infer that the jury was aware of his anxiety. This type of verdict-urging on the part of the court tends to undermine the proper function of the common law jury system as contemplated by the Seventh Amendment. We must guard against any such subtle inroads. We think the charge in this case went beyond the permissible limits of the Allen charge as it has been construed and approved by this court.

■ No objections were taken to the supplemental statements until after the jury returned its verdict of guilty and, of course, failure to timely object is susceptible to the imputation that the defendant speculated on the verdict and then objected when it went against him. But, since as we have said the statements go to the heart of the judge-jury relationship as it affects the fundamental right to a fair and impartial trial, we must notice them. This compels us to reverse the judgment.