**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Flores AMAYA, Defendant-Appellant.**

**No. 74–2311.**

United States Court of Appeals,
Fifth Circuit.

Feb. 27, 1975.

Peter Torres, Jr., Warren Weir, San Antonio, Tex., for defendant-appellant.

William S. Sessions, U. S. Atty., Eb Luckel, John M. Pinckney, II, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and GODBOLD, Circuit Judges.

GOLDBERG, Circuit Judge:

Defendant Flores Amaya was indicted and tried for conspiring to distribute a quantity of heroin in violation of 21 U.S.C. § 841(a)(1). The trial lasted two days. The jury deliberated for about a half hour at the close of the second day and was then recessed by the judge. At about 9:00 a. m. on the third day the jury reconvened. At about 1:25 p. m. on that day the jury passed a note to the judge which, while unavailable to us, evidently indicated that the jury was deadlocked. In response, the judge sent a letter which read: "Please continue to review the evidence again, try to reach a verdict and report back to me in one hour." The jury wrote back to the judge to explain that it had deliberated "for a few minutes" but decided it could not reach a verdict within the hour. At 2:25 p. m. the judge delivered an Allen charge[1] as reproduced below.[2] The

1. Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528.

2. Now, I don't want the record to reflect nor do I want anybody to know how you stand with reference to your deliberations in this case. Now you have asked for additional instructions and additional definitions which I have given you. And I know that you are trying very hard to discharge your responsibilities as jurors in a very conscientious manner. But as you know, this has been an expensive trial both from the standpoint of the Government and from the standpoint of you as taxpayers and as jurors, officers of this Court and as triers of the facts. And also it's a trying experience for the parties.

Now I stand ready at any time if you request it to charge you additionally as to the law or give you any other instructions that might be helpful to you. I have made the charge on the law in this case as simple as the applicable law would permit me to give it to you. I charge you additionally at this time that this is a most important case both from the standpoint of the Defendant and of the Government. But all trials are exceedingly expensive.

Your failure to agree upon a verdict will necessitate another trial equally as expensive. This Court is of the opinion that this case cannot be again tried better or more exhaustively than it has been by either side in the case. It is therefore very desirable from the standpoint of all the parties and everyone interested in this case that you do reach a verdict. This Court does not desire that any juror should surrender his or her conscientious convictions. On the other hand, each juror shall perform his or her duty conscientiously and honestly according to the law in this case and according to the evidence in this case.

Although the verdict to which a jury agrees must of course be his or her own verdict, the result of his or her own convictions and not a mere acquiescence to the conclusions of your fellow jurors, yet in order to bring 12 minds to a unanimous result, you jurors must examine the question submitted to you with candor and with proper regard and deference to the opinions of the other members of your jury. You should consider that this case must at some time be decided by somebody and by some jury in a position which you now find yourselves. You were selected in the same manner and from the same source from which any future jury must be selected. And there is no reason to suppose that this case will ever be submitted to a more intelligent or impartial or more competent jury to decide it or that clear evidence will be produced on one side or the other.

In conferring together, you ought to pay proper respect to each other's opinions with the disposition to be convinced by each other's arguments. And on the other hand, if the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his or her own mind is a reasonable one which makes no impression upon the minds of so many equally honest, equally intelligent with that juror who has heard the same evidence and with the same attention and with the same equal desire to arrive at the truth on the matter and under the sanctity of the same oath.

On the other hand, if a majority are for acquittal, the minority ought to seriously ask themselves whether they may not be reasonable and may not reasonably and ought not to doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated on this jury and distrust the weight or sufficiency of the evidence which fails to carry a conviction in the minds of your fellow jurors.

Now with this additional charge, and I cannot in view of the slight—I don't consider your deliberations at all lengthy at this time. I think that there is a possibility that the jurors have and usually do if given an opportunity on sober reflection arrive at a verdict. So I'm going to excuse you for the day and ask you to come back in the morning. I'm going to give you an opportunity to—you have deliberated from 9:15 today and you deliberated for about 30 minutes yesterday. But we had one jury deliberate under circumstances such as you have expressed here to

charge is substantially like that given in United States v. Fonseca, 5 Cir. 1974, 490 F.2d 464, save for the following accompanying comment:

> . . . you have deliberated from 9:15 today and you deliberated for about 30 minutes yesterday, but we had one jury deliberate under circumstances such as you have expressed here to me for over nine days and they finally reached a verdict. So I'm going to give you an opportunity to reach a verdict . . . .

The judge then dismissed the jury for the day. They reconvened at 9:15 the next morning and sometime between then and 10:40 a. m. they found the defendant-appellant guilty.

■ On appeal, Amaya contends that the instructions which the judge gave to the jury had the cumulative effect of coercing a verdict. If such was the case, then the instruction was incorrectly given and a mistrial must be declared. Jenkins v. United States, 1965, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957; Powell v. United States, 5 Cir. 1961, 297 F.2d 318. The basis of appellant's attack on the charge lies in the verbiage used.

### I.

The first specification of error lies in the trial judge's comment that he wanted the jury to report back to him within an hour as to whether they were able to reach a verdict. Other Circuits have held that the trial judge may not put the jury under any conscious, explicit time demands. United States v. Lansdown, 4 Cir. 1972, 460 F.2d 164, 169 n. 3; Goff v. United States, 10 Cir. 1971, 446 F.2d 623; Burroughs v. United States, 10 Cir. 1966, 365 F.2d 431.

In *Burroughs* the jury took the case at 5 p. m. and were asked by the judge to "see if you can't reach a verdict within an hour." An hour and twenty minutes later the jury came back to the courtroom to inform the judge that they were deadlocked. The judge then gave an Allen charge and asked them to go back and work until 7 p. m.: if they could not reach a verdict by then they would be recessed and would go back to their deliberations in the morning. The jury appears to have reached a verdict that evening. The Tenth Circuit reversed and noted:

> But, in any event, it is one thing to recall the jury to beseech them to reason together, and it is quite another to entreat them to strive toward a verdict by a certain time. When these admonitions are considered in their context, they are subject to the clear inference that the judge was unduly anxious to conclude the lawsuit, and we think it entirely reasonable to infer that the jury was aware of his anxiety. This type of verdict-urging on the part of the court tends to undermine the proper function of the common law jury system as contemplated by the Seventh Amendment. We must guard against any such subtle inroads. We think the charge in this case went beyond the permissible limits of the Allen charge as it has been construed and approved by this court. 365 F.2d at 434.

*Burroughs* is a stronger case for reversal than the one before us. In the present case the time suggestion was not repeated again in conjunction with an Allen charge. Nevertheless, it is reasonable to infer that the jury in the instant case may have taken from the judge's

---

me for over nine days and they finally reached a verdict. So I'm going to give you an opportunity to reach a verdict. I'm going to ask you now—your deliberations are important. I want to give you an opportunity on sober reflection to return to your residences. Do not discuss this case with anybody, among yourselves, away from this Courtroom. Don't discuss it with any member of your family. Do not read, by all means, anything about this case in the newspaper. You have my instructions on that.

Follow the instructions I have given you. Do not listen to it on the radio or watch it on television. And I expect you to be back in the morning at 9:15 to do your best to resolve your differences. Re-examine the position that each of you have taken and commence your deliberations at 9:15.

Mr. Gonzalez and Mr. Jacks will meet you here in the morning. Follow the instructions and you are excused until 9:15 in the morning.

remark that he was anxious to conclude the lawsuit.

The second specification of error lies in the closing comment of the judge that one jury had taken nine days to reach a verdict; and therefore he would continue to give this jury "an opportunity" to reach a verdict.

In two cases this Circuit has considered the legitimacy of an instruction which intimated to the jury that the judge was prepared to allow their deliberations to continue for days. In Cook v. United States, 5 Cir. 1958, 254 F.2d 871, we reversed and remanded a case in which the trial judge had pressed the foreman to indicate the actual numerical division in the jury and had then said:

Now, you give the Marshal your name and your address and he will send and get your shirts and whatever underclothes you need and your razors, so you can make yourself comfortable. Now, I am not going off and leave you all. I am going home Friday afternoon. If you do not reach a verdict by that time you can call me on Saturday at Brunswick, if you reach a verdict on Saturday. I will be back here Sunday afternoon. I am not trying to threaten you. I am telling you exactly what the Court is going to do.

To which this Court responded:

The mere asking of the question as to the standing of the jury . . . is error per se. In this case that error was aggravated by the suggestion that the jury might be held together through Thursday, Friday, Saturday and Sunday. . . . Within its perogative, the jury must remain as free from any possible influence or coercion, even though unintended, as the trial judge would require that he himself be when sitting as a trier of fact.

In Boyett v. United States, 5 Cir. 1931, 48 F.2d 482, the trial judge told a deadlocked jury that some of the jurors did not want instructions, and were unwilling to follow the instructions supplied by the Court. He then said, "It does not seem to the Court that there should be any great difficulty in arriving at a verdict in this case." He added:

Mr. Marshal (addressing the Marshal of the Court): You can prepare supper for this jury and a place for them (to be made comfortable) for the night, and after supper you may permit them to consider their verdict until bedtime, and then permit them to retire until morning, and after they have had breakfast, return them to their jury room for further consideration of their verdict. Be sure and see that they are made comfortable. 48 F.2d at 483–484.

We observed:

[W]hen the jury came into court the second time the judge made it very clear to them that he believed some of them were derelict in their duty and that he intended to punish them by keeping them sequestered indefinitely until they reached a verdict. This tended to intimidate and coerce them. 48 F.2d at 484.

Both of these cases presented far stronger intimations of coercion than does the present case. In each the Court's focus was upon the other element of coercion in the case—the demand for a numerical count or the castigation of jurors unwilling to follow instructions. But in each the Court indicated that it would be unwilling to tolerate coercion by the district court in the form of explicit mention of the possibility of prolonged deliberation.

The instruction in the present case can plausibly be read merely as an indication that the jury should take the time it needs. On this hypothesis, the mention of the nine days is only to quiet qualms that the jury may have that it should rush to a conclusion; for as of yet, it had not taken an exorbitant amount of time. Moreover, the sentence following the "nine days" comment suggests that the judge was merely giving the jury "an opportunity to reach a verdict" and was not demanding one from them. On the other hand, the mention of the nine days can also plausibly be read to sug-

gest to the jury that it was "in for the duration." Under this hypothesis, the judge was indicating that he would not easily let the jury out of coming to an agreement, and was prepared to have the jurors invest a great amount of time deliberation if some of the jury members chose to be stubborn. This inference of a desire for a verdict is strengthened by the fact that merely an hour before he had suggested to the jury that it try to reach a verdict and report back to him. It is, of course, possible that different jurors reacted in different ways to this charge. For some concern over their indecisiveness may have been quieted while others may have been further aroused by the bleak prospect promised by continued indecision.

This Court, then, is faced with deciding the legitimacy of trial instructions which indubitably go beyond the Allen charge approved in United States v. Bailey, 5 Cir. en banc 1973, 480 F.2d 518, affirming, United States v. Bailey, 1972, 468 F.2d 652 and United States v. Fonseca, 5 Cir. 1974, 490 F.2d 464,—but which exacerbate it in the following manner: (1) they include a single note to the jury suggesting the jury report back in an hour; while suggestive of a deadline, the note here was less coercive than were the instructions in previous "deadline instruction" cases; (2) they include the "nine day" reference; this statement is ambiguous and might be read as either a threat to the jury or in mitigation of the jury's pre-existing consciousness of the duration of its deliberations.

■ We find that the nuances hereabove mentioned are beyond the allowable perimeters of jury instruction.

## II.

The Allen charge both deserves and receives a healthy disrespect in our courts. The original panel in United States v. Bailey, termed the charge "an abusable relic" which created a possibility of prejudice whenever given and subsequently served as "an overly fertile source of appeals." 468 F.2d at 668, 669. Nevertheless, this Court approved the continued use of the *standard* Allen charge in United States v. Bailey, en banc: "We adhere to our decisions approving the Allen charge within the limitations therein delineated." 480 F.2d at 518. All of the cases then cited by the Court involved that standard charge, either alone or with an additional, but clearly mitigating, instruction.

This is no accident, for this court has long recognized the susceptibility of the charge to coercion's pointed finger, and we have therefore sought to limit it. In Green v. United States, 5 Cir. 1962, 309 F.2d 852 this Court said:

> [A]n old decision of the Supreme Court has upheld the charge as a reminder to jurors that "they should listen, with a disposition to be convinced, to each other's argument." Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. *This is the outermost limit of its permissible use.* There is no justification whatever for its coercive use.

309 F.2d at 854 (emphasis added). The *Green* opinion reflects our conclusion in Powell v. United States, 5 Cir. 1961, 297 F.2d 318 that:

> It is implicit in the decisions of the Supreme Court dealing with the Allen case [citations omitted] that the Fourth Circuit was correct in its recent holding [in United States v. Rogers, 1961, 289 F.2d 433, 435–37] '*that the Allen charge, itself, approaches ultimate permissible limits . . . .*' in handling situations similar to that facing the court below. 297 F.2d at 321 (emphasis added).

We are thus faced with a standard charge which itself approaches the border between instruction on jury responsibility and jury coercion, coupled with comments which may plausibly be read to increase the likelihood of intimidation. While we cannot gauge that effect with certainty we are reminded:

> Moreover, '[S]uch departures impose on appellate courts the almost impossible task of weighing the prejudicial impact' of variations in the approved charge. [Citation omitted]. The im-

pact can never be assessed accurately, for the relevant events take place in the secrecy of the jury room, and never appear in the trial record. For us to become involved, at this point, in gauging the coerciveness of various *Allen*-type renditions would be to launch us on an unnecessary voyage in judicial review. United States v. Angiulo, 1 Cir. 1973, 485 F.2d 37 at 40.

■ Where a charge may be plausibly read as more coercive than the standard charge we must hold that the charge was incorrectly given. So much is implied in our decision in Thaggard v. United States, 5 Cir. 1965, 354 F.2d 735, where we said: "This court, although sometimes reluctantly, has approved the 'Allen' charge, while *carefully assuring ourselves* that there are not engrafted upon it any partial or one-sided comments." 354 F.2d at 739 (emphasis added). In the first part, we are unwilling to risk even a small chance of increased—and therefore immediately illegitimate—jury coercion over that which inheres in the borderline Allen charge merely for the sake of instructional novelty. In the second part, to hold otherwise would turn this Court into a psychologists' symposium with resultant great expenditures of energy and yet necessarily capricious solutions. *Cf.*, United States v. Duke, 5 Cir. 1974, 492 F.2d 693 at 697.

Of course, additions to the standard instruction which clearly mitigate its coercive impact—by pointing to each juror's duty to his own conscience, or the need for the majority to listen again to the minority as well as vice versa—may still be given. *See, e. g.*, Posey v. United States, 5 Cir. 1969, 416 F.2d 545, 551–552; Sanders v. United States, 5 Cir. 1969, 415 F.2d 621, 631.

In *Bailey,* this Court indicated how far we will allow the *Allen* charge to go. We will sanction soothing and purgative additions, but any verbal gilding which may plausibly be read as coercive must be disapproved. We must remain ready to prevent a concentrated coercive charge from judicially catalyzing a sur-

render of beliefs. We must be as certain as physically possible that the conjunction of time and words is not coercive. In *Bailey* we approved a bare branch; we must always be ready to prune to insure that it does not fructify. The sanctity of jury deliberations cannot be sullied by a trial judge's extra-*Allen* nudge.

Because we must reverse and remand this case on the basis of the instructions given, we pretermit discussion of the other errors alleged by the defendant-appellant.

Reversed and remanded.